## C. F. ROTERING ET AL. TRUSTEES, *vs.* BROOKE I. JAMISON.

*Right of Appeal—Lack of Interest—Judgment Lien—Waiver—*
*Right to Question.*

From a decree involving a decision that a judgment lien had been waived as against the purchaser under a junior judgment of property belonging to the judgment debtor, no appeal lies by persons who were not parties to the proceedings below until after the decree had been passed and had become enrolled, who had not prior to that time intervened or asked to be made parties, although knowing of the pendency of the suit, and who were not entitled to be made parties, because they had no interest cognizable in law in the property affected by the decree, in the subject matter of the suit, or in the judgment under which the property was sold.                                                    p. 300

The absolute owner of a senior judgment against two persons, against one of whom he also holds a junior judgment, may waive the lien of the senior judgment on the property of the junior judgment debtor, in favor of one who purchases such property at a sale under the junior judgment.             p. 300

Whether the act of a judgment creditor, in waiving the lien of a senior judgment as against land sold by it under a junior judgment, operated as a release of the senior judgment as against one of the senior judgment debtors, is a question between such debtor and the judgment creditor, and cannot be decided in a controversy between the judgment creditor and the purchaser at the sale under the junior judgment, to which judgment the senior judgment debtor was not even a party.    p. 300

A joint judgment debtor cannot compel the holder of the judgment to execute it against the property of the other judgment debtor, or even to execute on it at all, nor can he complain because the holder of the judgment waives the right to execute it against such other's property.             p. 301

*Decided February 29th, 1924.*

Appeal from the Circuit Court for Frederick County, In Equity (WORTHINGTON, J.).

Bill by Brooke I. Jamison against Anna E. Horner and others. From a decree for plaintiff, C. F. Rotering and others, trustees, appeal. Dismissed.

The cause was submitted on briefs to BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Frank L. Stoner, William M. Storm* and *Vincent Sebold,* for the appellants.

*Jesse F. R. Heagey* and *Reno S. Harp,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Annan, Horner & Company, on April 28, 1917, obtained in the Circuit Court for Frederick County, Maryland, a judgment against Lou H. Callahan and C. F. Rotering, individually and as partners, for $4,000. On September 23rd, 1920, they obtained a judgment against Callahan alone for $1,466.88 in the same court. Prior to May 19th, 1921, a writ of *fieri facias,* returned on that day and issued on the last named judgment, was executed by the sheriff of Frederick County, who sold under it certain land in the town of Emmitsburg owned by Callahan to Brooke I. Jamison for $2,400. Part of the purchase price was applied to the payment of the judgment against Callahan alone, and the balance paid on account of the judgment against Callahan and Rotering. At the September Term, 1922, of the Circuit Court for Frederick County, a writ of *fieri facias* was issued at the order of the plaintiff on the judgment against both Callahan and Rotering, which at that time had been assigned to the Farmers and Mechanics National Bank, and the sheriff in executing that writ again levied on the same property which he had sold under the first execution to Jamison. Jamison thereupon filed in the Circuit Court for Frederick

County a bill in which he set out the facts stated above, and
further alleged that when he bought the property at the
sheriff's sale a representative of the plaintiff, a member of
the firm, was present, and that he, acting for them, had
waived the lien of the former judgment against the land
and authorized and ratified a sale of it to the appellee free
and clear of the prior lien of that judgment, and he, Jamison,
accordingly asked that the further execution of that judg-
ment against the property sold to him by the sheriff of Fred-
crick County under the former judgment be enjoined. The
bill was filed against the several persons composing the firm
of Annan, Horner & Company, the Farmers and Mechanics
National Bank, and James A. Jones, sheriff of Frederick
County. The bank filed a combined answer and demurrer
to the bill, while the other defendants answered it. The
pleadings presented a single issue of fact, to wit, whether
any member or representative of the firm of Annan, Horner
& Co., acting for it, by his words or conduct waived the lien
of the first judgment against Callahan's property at the time
it was being sold under their second judgment. Without re-
capitulating the testimony taken in connection with that
issue, it is sufficient to say that it showed that no announce-
ment was made, either in the advertisement of the sale or at
the sale itself, that the property would be sold subject to the
lien of an older judgment, but that at the sale, when a ques-
tion was raised about the dower rights of Mrs. Callahan in
the property, the auctioneer, with the authority and in the
presence of Annan Horner, a member of the plaintiff's firm,
who attended the sale, announced that a "good, clear title" to
the property would be given, and that the sale was made
after that announcement. Upon that testimony the trial
court signed a decree perpetually enjoining the plaintiffs
from enforcing their judgment of April 28th, 1917, against
the property sold to Jamison. That decree was so far satis-
factory to the judgment creditor that it entered no appeal
from it, but, nearly two months after it had been filed, the
appellants, who up to that time were not parties to the case,
filed a petition in the case which contained these statements:

"First:  That your petitioners have qualified as such trustees in said No. 10642 Equity, and have in pursuance to an order of your honorable court sold the personal property amounting to about eleven ($11,-000) thousand dollars and have distributed the same to the creditors of the said C. C. Rotering.

"Second:  That there remain in the hands of your trustees several pieces of real estate belonging to Mr. Rotering in value amounting to several thousand dollars, which it was the intention of your petitioners to sell and distribute the proceeds thereof to the creditors, but before the same was done your honorable court handed down an opinion in the above entitled cause, the effect of which is to sustain a lien on the above mentioned real estate, which your petitioners contend should rest upon the real estate of a certain Callahan, and not upon the real estate of said C. C. Rotering.

"Third:  That in the above mentioned distribution 50% was paid to the creditors, and there is still due them about eight thousand dollars, which the above mentioned real estate would partially liquidate.

"Fourth:  The effect of the decision in this cause if unreversed will deprive the creditors of the benefit, in large part, of the Callahan real estate, without an opportunity to take any steps to protect themselves, unless an appeal is allowed.  Several large creditors of C. C. Rotering desire an appeal."

And in it they prayed the court to pass an order making them "party defendants in the above entitled cause, with liberty, in their discretion to enter an appeal to the Court of Appeals of Maryland from the judgment entered in this cause, the costs and expenses of which to be paid out of funds now in the hands of the trustees of this estate."

Upon that petition the court passed an order making them parties defendant, with leave "if they have the legal right to do so" to enter an appeal to this Court, and pursuant to the authority conferred by that order, the appellants have taken this appeal.

The first question which we are called upon to consider, in connection with the appeal, is raised by a motion to dismiss it, which was seasonably filed in this Court by the appellee. The controlling question presented by that motion is whether the appellants have any appealable interest in the controvery. They were not parties to the proceedings below until after the decree had been passed and had become enrolled, nor prior to that time had they intervened or asked to be made parties, although they knew that it was pending, and, what is a more important fact, they were not entitled to be made parties, either before or after the decree appealed from, because they had no interest cognizable in law in the property affected by the decree, in the subject matter of the suit, nor in the judgment under which the property was sold to Jamison.

The issue decided by the decree from which this appeal has been taken was whether Annan Horner & Company had waived the lien of its first judgment against the property it sold under its second judgment, and in that question the appellants here have no possible interest. That Annan Horner & Company had the power if it wished to waive the lien of its judgment against particular property or to release it outright for any consideration or purpose whatsoever can hardly be questioned, since at the time it was the absolute owner of both judgments. Whether its act in waiving its lien against the Callahan property operated as a release of it as against Rotering is a question which may be raised should the holder of the judgment attempt to execute it against the property held by Rotering or his assignees, but whatever may have been its effect upon the lien of the judgment as against Rotering, is a question between Rotering and the holder of the judgment, and cannot be decided in a controversy between the judgment creditor and the purchaser of property sold under a judgment to which Rotering was not even a party. Rotering had no power or right to prevent Annan Horner & Company, from waiving the lien of its judgment against Callahan's property, and if the act of that company in doing that injured him, his remedy would be against it,

and not against Callahan. He could not have compelled the holder of the judgment to execute it against the property of Callahan in the first place nor even to execute on it at all, nor can he now therefore complain because it has waived its right to execute it against that, property. *Council Bluffs Savings Bank* v. *Griswold,* 50 Neb. 753; 23 *Cyc.* 1402-3.

These principles appear self-evident, and there is certainly nothing suggested in the petition to prevent their application to this case, and without further discussion of the question it follows that in our opinion the appellants have no interest in the subject matter of this proceeding, and the appeal must be dismissed.

*Appeal dismissed, with costs.*